You want to take the final matter, Singer v. Milgram? May it please the Court. My name is William Sharon from Prior Cashman. I represent the appellant, Live Gold Operations Inc. With the Court's permission, I'd like to reserve five minutes for my rebuttal. This panel has presented four questions on this appeal, which concerns the meaning of prevailing party under Section 1988b. I'd like to use my opening time to try to answer as many of those questions as I can. Initially, the meaning of necessary judicial imprimatur, corresponding alteration in legal relations, and where does this case fit within the outer limits of that construct? It's appropriate to reason backwards to answer these questions, because we know from Buckhannon that we cannot have a catalyst theory at work. We also know from Buckhannon that a catalyst theory means, quote, there's been no judicially sanctioned change in the legal relationship of the parties. In other words, the State changes its position without a district court ever having to make clear that the plaintiff is entitled to legal relief, or, as Justice Scalia wrote in Buckhannon, the plaintiff has superiority in legal merit. Therefore, the non-catalyst situation is when the State changes its position because of the district court. The district court looks at the State and says, you're wrong. And the State says, oh, we're wrong? Then we'll change. That's not a catalyst situation. In other words, the district court can be credited as having made the defendant stop, and that that causal connection is clear, proximate, and unassailable. For example, in Buckhannon, the court approved of final judgments and court-ordered consent decrees. It did not approve of just commencing a lawsuit without the district court ever actually doing anything. However, the Buckhannon court also expressly and explicitly approved of the result in the Eighth Circuit's decision of Parham v. Southwest Bell. What happened in that case is there was a finding of racial discrimination, but all that happened was that the court retained jurisdiction so that it could impose an injunction if there was ever any backsliding by the State. However, no actual injunction was ever issued. That was sufficient. We see from cases in this circuit and the Ninth Circuit, which are two of the more pronounced in this area, that the prevailing party status vests when the district court does something that produces a lasting change in conduct that is the functional equivalent of a judgment on the merits or final ultimate relief. Preliminary injunctions that get dissolved after they have done their job vest prevailing party status. TROs that deliver ultimate relief vest prevailing party status. Cases get mooted and closed without anything more because there's nothing more that needs to be done. I would like also to direct the court to two recent cases from 2010, since the last time I was here arguing. One is from the Western District of Missouri called Doe v. Crane from October of 2010. There, there was an opposed TRO. It turned into a judicially sanctioned admission, just like we had here, and the court found that that was analogous to a court-ordered consent decree and vested prevailing party. In the case of Sound v. Kohler, the District of Hawaii, May 2010, there was an opposed TRO. There was a stipulated continuance of that TRO, and the court found that the plaintiffs got precisely the relief they sought as a result. This case does not revive the catalyst theory because it is clear, irrefutable really, that the Attorney General stopped her conduct because of the district court. The Attorney General was given notice of the TRO hearing. She appeared, she opposed with premeditated arguments, and she lost. The TRO was entered, and that actually gave ultimate relief. It was effectively a permanent injunction with regard to the Hilton show itself, which was why Live Gold came. The Attorney General then returned. She repeated and reinforced the same arguments, and she argued that there was no jurisdiction. The district court rejected the jurisdiction challenge, and after having made findings at the TRO hearing about likelihood of success, reaffirmed in five different places during the preliminary injunction hearing that the Attorney General was wrong, that there were, quote, equal protection, First Amendment, due process problems with what she was doing, and made clear that Live Gold was entitled to some legal resolution of those problems. Specifically, at page 385 of the record, Judge Debevoise said, quote, well, I failed to see it, and there's no reason for it. That was when he was responding to the Attorney General's arguments of why she was discriminating between unregistered as opposed to registered trademarks. At page 387, Judge Debevoise said, it seems to me that the basic legal problem, which was an equal protection problem, a First Amendment problem, a due process problem, are resolved if Live Gold's position is accepted. At page 388, Judge Debevoise said, that's my understanding of what the law is and should be, all right? I just don't want to muddy it with the Attorney General's argument that recording groups were required to give consent. That was in response to the Attorney General's argument about what a, quote, unquote, proper trademark should be. At page 388, Judge Debevoise said, now, no necessity of, to say, or give any tribute to anybody. You didn't talk about Buchanan's requirement for a judicially sanctioned order or an enforceable judgment. I didn't hear the last part of it. We started, of course, with the TRO. We do have a TRO. We do have the judicially sanctioned order. We've got a, Judge Debevoise literally exercising, flexing his judicial muscle to bind her in open court instead of converting the TRO into a preliminary injunction. Referring to what the judge said on the bench verbally. That's correct. In the transcript, and he repeated it in his order that is the subject of this appeal, which is, in fact, another signed order. That is an order where the court dismissed the case in response to the Attorney General's arguments that the case was mooted because she had been bound by the district court. That's another order. In the district court's opinion, something you kind of gave the backhand to in your brief, Judge Debevoise said, I didn't decide the prior proceeding on the merits. Isn't that entitled to some deference? During the fee hearing, March 9, 2009, Judge Debevoise actually questioning the Deputy Attorney General said, didn't I decide this on the merits when I issued the TRO? And that did give ultimate relief. In his written opinion, he then did take a step back and say, well, all I did was issue a TRO. He said he did not decide it on the merits. Respectfully, I think that is the issue of law. When we first came here, the Attorney Generals had argued that that constitutes a fact finding subject to a clearly erroneous standard. Respectfully, the issue here is what is judicial imprimatur? Did he make findings? For whatever reason that Judge Debevoise decided that the finding likelihood of success on the merits at the TRO and the language that I just quoted where he's saying, that's my understanding of what the law is and it's not what you're arguing the law is. And then as a result, the Attorney General, in Judge Debevoise's words, does 180 degree change on the merits. That is resolution on the merits. That's an issue. He hasn't answered the question. He said, what deference does it do? Is your answer none? It's not due a clearly erroneous standard. It's due a de novo standard. It's the province of this court to re-evaluate for itself. So your answer is none, then. Okay. Does that mean, you quoted from Judge Debevoise at a hearing, when I was on the district court, and I'm sure many of us did this as well, we'd say, this is my understanding of the law, that every time he said that, one of the parties, depending on how, to whose benefit it was, could then say, aha, I win. It's over. Judge Ambrose's dissent raises the same concern. And obviously we can't be chilling district judges from engaging in banter or back and forth, but a review... But it isn't chilling. The question is, what effect may that statement be used to? Again, the job of this court in trying to decide, in answering the question of what is judicial imprimatur, reviewing the analysis, reviewing what the district court actually did, if it is obvious, if it was assured that the TRO was going to be converted into a preliminary injunction from what was happening, then that's enough. Here, Judge Debevoise was not... In other words, I never faced any of the same questions from Judge Debevoise. It was entirely directed at the Attorney General, and there was not even any equivocation. Well, the Attorney General's decision to switch positions and adopt your preferred interpretation of the Truth in Music Act, why wasn't that anything other than a voluntary decision? Because she never did that on her own. This was... There's the argument that... You're talking about a state attorney general. You mean she was coerced into making that decision? She was effectively coerced by the district court into making that decision. That's why I'm the turnpike heading for your office. The district judge had written it all over the walls of that courtroom. You are about to lose. You're wrong. I am going to take this TRO, which gave them the ultimate relief with the Hilton show, and I'm going to continue it because I fail to see the merit in what you're saying. He said, you're truly wrong at one point. He said, this is what the law should be. Didn't Judge Debevoise do what any good district court judge would do? He used the force of his intellect, his considerable credibility, and he effectively settled the case. Well, on the settlement, I would argue that this is indeed analogous to a court-ordered consent decree, but Judge Debevoise indeed did... You don't have a decree. Well, we have the judge. The judge enters it. He says, you're bound. He looks at me and says, she's now bound by this. You're bound by your 180-degree change in position. When a court relies on what a litigant is doing, a litigant gets up and represents. I'm now going to interpret it this way. A district court relies on that, and A, keeps the proceeding... Judge Debevoise kept the preliminary injunction hearing open for one-and-a-half years in order to make sure that just as Justice Scalia was discussing in Buckhannon in analogizing Parham, there would be no backsliding on what had happened. And at the end of the day, the attorney general first argued that the case was supposedly moot because of the TRO, and we had gotten all the relief we came in for, and then argued again that it was moot because of the judicial binding. You see in the cases that courts don't want to encourage you to go through the process of further litigation to get a particular kind of paper. We don't want to elevate form over substance that way. Couldn't you have offered an order or a judgment to the court? We agree on this, and I'd like it in writing. Actually, Judge Debevoise did that for us. He memorialized it on the record. That is certainly enforceable against the attorney general, and she confirmed it when she came back a year-and-a-half later and said, yes, I'm still bound by this. I'm not doing anything different, and I won't. That's why this case is moot and not capable of repetition any longer. If Live Gold had a contract to play at Teaneck, a lovely hotel in Teaneck, New Jersey, and the same thing happened. The attorney general says, you have to do X, Y, Z under the law, and you representing Live Gold, would you be able to say collateral estoppel or res judicata to stop the attorney general's action? I believe the short answer to your question is collateral estoppel or res judicata. Because it's the same parties. Right. Issue preclusion, which I believe is collateral estoppel, would apply. She could not come back and say, I got Judge Debevoise to dismiss this case on mootness ground because I assured him that I was indeed bound by that judge's power. Judge Debevoise did exactly what he should have been doing, Judge Barry. He came in, a federal judge with a great intellect and an understanding of the Constitution, never looked at me and doubted what I was saying, only cast his eye at the attorney general and repeatedly, repeatedly said, you're wrong, and in the order that is the subject of this appeal, confirmed that he in fact found, that's his word, I found equal protection to process First Amendment problems. To establish collateral estoppel, do you have to have a judgment? To establish collateral estoppel for issue preclusion, I don't know the answer if you need a specific judgment. I think that where it deviates in this analysis is because you don't need a judgment per se. You need the functional equivalent, which is what we have. It seems to me that in this situation, which hurts, I think, your argument, you now do have a new attorney general who's substituted in here, but you're going to have the next attorney general, and without some judgment or order on the record, the next attorney general will come in and say, wait a minute, you know, these new groups are clearly violating what we think the truth and music of the law is all about, and we're going to say without a registered trademark, you need to have a tribute. Is there enough on the record to bind that office? There is, Your Honor, because her office was bound. Judge Debevoise referred in his order to how Attorney General Milgram agreed that her office would be bound by what her deputy did in court that day. That is binding. Is that in this case or bound forever, in perpetuity? It has to be bound in perpetuity. It would be contempt of court to come in. You've got to answer the question why on that. It would be if there had been, if the TRO, if she had come in during the period of the TRO and continued to harass the Hilton, that would have been contempt. If the TRO had been converted into a preliminary injunction because she didn't agree to be bound in open court, that would have been contempt. But it wasn't. Right. And you're not answering the question about in perpetuity. So far the two hypotheticals you put out talk about this particular dispute, and the question being put to you is, well, you raised that this meant they were bound to that position for all time. What happened? What can you point to in this record that would lead to that conclusion? The office is greater than the individual Ann Milgram or Paula Dow. The office was bound. If the office turns around, and by the way, the same deputies who worked for Attorney General Milgram are here today for Attorney General Dow. If the office, not the person, but the office turns around and starts reinterpreting the Truth in Music Act the way they were, we could seek contempt. They would be violating an order of a court that said you're bound. They would be violating the order of the court that said I'm relying on you to dismiss this case because you are bound. And mootness means not capable of repetition. That's perpetuity. You really think that in that case that you would actually get a contempt order? I mean, all you could really get is, look, in the past you've said X, we think you're judicially estopped, or I think you're judicially estopped from making that argument. That's the best you can do. You're not going to get a contempt order. Having represented Singer Management at the start of this case, which is no longer a party which was held to be in contempt, I do believe that if the Attorney General's office was to thumb its nose or flout what happened in Judge Debevoise's courtroom and to flout Judge Debevoise's reliance on that in order to bind her so that I had to leave his courtroom then, I tried to move for summary judgment. I couldn't because the Attorney General's office was still claiming an investigation of the contract rights. Isn't, in this case, one of the big problems, and you clearly have a sympathetic case, there's no doubt about it, but isn't the problem that you've got a Supreme Court case that says that you need a judgment and it has to be on the merits, and the judge who actually was there at the scene said that I have not given a judgment, and he specifically said so, I don't have to make any final decision on A388, and I did nothing on the merits. I mean, he said that. We need the functional equivalent of a judgment. We don't need a piece of paper called a judgment. PAPV makes sense. But the judge himself is saying, I don't think I gave you the functional equivalent of a judgment. The judge in this case, although it shocked me after the fee hearing when he was looking at me and saying, you won the case, and looking at the Attorney General's and saying, why shouldn't you have to pay their fees, it was surprising to me that Judge Debevoise issued the order he did, and I can't explain it. All I can say is that it is a legal question, and there is enough in this record, it is compelling in this record, it is irrefutable in this record. It looks as what he was saying at the fee hearing is your good counsel, your good advocacy, and perhaps some of the questions that I asked at oral argument at the PI hearing were the impetus for the state changing its mind. In other words, we together were the catalyst for the state changing its mind, and unfortunately in a 5-4 decision the Supreme Court said that's not good enough. I can't interpret, when we were at the fee hearing, one of the leading arguments that the Deputy Attorney General made is that this is a time of recession, we shouldn't be taxing the state's dollars with having to pay. I can't explain why Judge Debevoise did what he did. What I can explain is that we don't need a judgment, we need a functional equivalent. We need something. You keep saying that and lying about PAPV, but that's a different case where you've got a ruling on the merits there, and you don't have that here. There, actually, the ruling on the merits was done at the TRO stage. The preliminary injunction was converted, the TRO was converted into the PI unchanged. The determination was done at that initial stage. The two cases I cited to the court, Doe v. Crane and Sound v. Kohler, TRO stage. You gave us the name but not the stage. Yes. Doe v. Crane is 2010, Lexus 105-518, Western District, Missouri, October 4, 2010. Sound v. Kohler is 2010, Lexus 49665, District of Hawaii, May 19, 2010. You don't have a ruling on the merits. How do we come to that conclusion which is required by Buchanan? Well, if we take the authorities such as Doe v. Crane, such as Sound v. Kohler, such as LSO, even Garcia from the Second Circuit, we do have a ruling on the merits with the TRO because it did provide ultimate relief. What you're arguing is you have a functional equivalent of a ruling on the merits. After that, there are four orders in this case. There's the TRO. That, in and of itself, could have been enough. Under the circumstances, that could have been enough. The TRO is a likelihood. But this TRO, I came in asking for a true TRO, something emergent, temporary, status quo. Judge Debevoise, after hearing argument, extended it beyond the statutory period to the entirety of the Hilton show. And this TRO qualifies because the Attorney General then comes back and says, well, the case is moved. He got his TRO. He got all the relief he wanted in the face of my opposition to him requesting that. He got it. Beyond that, we've also got, of course, the statement of Judge Debevoise binding her in court. We've got Judge Debevoise retaining his jurisdiction. He never closes the preliminary injunction hearing. He keeps it open, just like in Parham, in order to make sure that the Attorney General doesn't backslide. But he also said that the TRO was no longer in existence. The TRO had dissolved on its own terms. He actually misspoke in his order. He said he had vacated it, and that's one of the questions this panel posed. The TRO was not vacated or dissolved on the merits. This is not like Sol V. Weiner or John T. This is a situation where the TRO had done its job and had vacated on its own terms. It had expired. The question at the preliminary injunction hearing was whether to continue that, as in PAPV, into a preliminary injunction or not. And what happened was truly shocking when after 20 minutes of arguing and clearly being told she's wrong, when the writing's on the wall, she says, I give up. I'm going to do it differently. I promise. I'm bound. So there's no need to convert it into a preliminary injunction at that point. Well, here's what I don't understand. How is what Judge Debefois did in that instance different than what district court judges do in courtrooms every day, and that is, you know, you quoted a minute ago on another point saying, you know, he said this or he opined on this. Isn't that what district courts do? They have a discussion, oral argument. There's musings. There's statements. There's a back and forth. I don't hear you citing him saying, you know, I am ruling, I have found, I have determined, or the like. Well, I did quote earlier, but I will also say, Judge Greenaway, after what happened, I've certainly never seen anything like this in everyone I've spoken to. This is sort of a once-in-a-lifetime. Have you seen a lawyer do an about-face in an oral argument? I have never seen a state government official at the end of an oral argument where it's about to be ruled against her after the judge just says his last words before she does the changes, well, I fail to see it. And then he comes back and says, why won't you interpret it the way Live Gold has been arguing? Well, what does that, what are we to intuit from that other than he's engaging in a colloquy with people in front of him? There's no need to intuit, or there's no need to tea leaf read in this one. This is not musings where during my part of the oral argument, which is what happens in courts all the time. We've seen it today for the last two hours. This court, you know, hands it to counsel. And we banter to go back and forth to arrive at the right conclusion. What is the right result? Would you say that things said here in this courtroom today amounted to judicial rulings equivalent to a judgment? Absolutely not. But if this court had let one counsel speak for five minutes uninterrupted and then said, okay, we have no questions for you, and then got the other counsel up there and said, that's not the law, you're truly wrong, we fail to see it. That is clear that there is a judicial set. No, that's not a judgment. That's not a judgment. But if then in response to that, counsel says, your Honor, we give up. We withdraw. They're right. We're wrong. Yeah, it sounds like you're arguing that Buchanan is problematic. Everything you've said so far convinces me what the four dissenters did, and that is Buchanan in the real world can create some real problems because you create a situation where one attorney, where they see that they're about to lose this case, will say, okay, we give up, and therefore they dodge attorney's fees. But again, we're stuck with Buchanan. In Buchanan, what we can't have clearly is, as in Buchanan, there's a lawsuit filed, and the district judge never gets in front of a microphone, never says anything. The legislature passes new law. We can't ordain. Why? And we shouldn't have to. That's what Buchanan is concerned with. Buchanan says that there must be judicial sanctioning. There needs to be findings on the merits. On the merits. On the merits, correct. And here there were those findings multiple times. When the judge says you are bound, is that the usual judicial banter that you have in a courtroom? No. As I said, Judge Roth, I have never seen and anyone I've spoken to has never heard of anything like this. The fact that this went on to the judge then saying the new position and you are bound, is that not perhaps the most significant part of the whole colloquy? Of the colloquy? Absolutely. You are now bound. So what is the new rule that you would suggest that we apply to determine whether there's a judgment on the merits? When the district court, I took some time to write this out, so I'd like to read it if I may. When the district court can be credited as having made the defendant stop her conduct and that that causal connection is clear, proximate, and unassailable, necessary judicial imprimatur exists. When the binding exists so that the defendant does indeed stop, the defendant goes further and says we are bound. We will never be repeating this conduct and that's why this case is now moot. That is a material alteration in legal relations. And, of course, again, that's putting aside the TRO, which stands on its own. Counsel, listen. Judge Aldiser, were you trying to get a question in before the light came on? I apologize, Your Honor. She's speaking to the cybernetic figure in front of me there. Judge Aldiser, did you have a question? Yes, I do. On this, I see repeatedly the questions saying about judgment on the merits. Well, that wasn't written in stone in Buchanan. I want to quote Judge Ambrose in his dissent. He said Buchanan characterized these two resolutions, that be judgment on the merits or consent decree, as, quote, examples of decisions that create the necessary material alteration of the legal relationship of the parties. Now, this is important. Thus, there may be resolutions other than the two identified in Buchanan that warrant prevailing party status. And that is just the full court and Justice Scalia in his separate concurrence twice explicitly made clear this court in Buchanan approves of the result in Parham. There was no judgment in Parham. There was a finding of race discrimination, and there was a retaining of jurisdiction so that a potential injunction could be issued if there was backsliding. But that never existed. That's even less than what we have here. Okay. Mr. Charles, thank you very much. Thank you. Good morning. Hi. Good afternoon. May it please the court. I'm Andrea Silkowitz, Assistant Attorney General, representing the Attorney General of New Jersey. Consistent with the approach that the Supreme Court has taken in other 1988 decisions, Buchanan established an objective test for determining whether or not a party should be prevailing party status for purposes of 1988. The Buchanan court underscored that the test for prevailing party status must focus, in the first instance, on whether or not the court entered an enforceable judgment, which was merit-based, predicated on a finding of a 1983 violation, and which thereby effectuated an enduring change in the legal relationship between the parties. The test for a prevailing party cannot be, as Live Gold here posits, untethered to a merit-based and non-1983 predicated judicial order, nor, as was the case in Buchanan and Soll v. Weiner, primarily focused on whether some success was achieved through the litigation. I'd also like to note that contrary to counsel's description of Parham as supporting his position, that Chief Justice Rehnquist, in footnote 9 in Parham, indicated that, although there was catalyst discussion in the Parham decision, the court granted relief only after finding that the defendant had acted unlawfully. Quote, we hold as a matter of law that plaintiff's evidence established a violation of Title VII. Thus, the court ruled, consistent with our holding in Parham, stands for the proposition that an enforceable judgment permits an award of attorney's fees. The role that Live Gold seeks this court to embrace suffers from all of the defects that Buchanan sought to overcome. It requires an assessment of the subjective motivation of the governmental defendants. It provides for an expansion of the court's inquiry as to prevailing party status, resulting in protracted litigation and appeals. But even more so, it requires an assessment of the subjective motivation and import of the district court's comments during oral argument that are not reflected or memorialized in a court order or judgment. And finally, their argument fails to accord substantial deference to the district court's understanding of its own orders and the effective denial of others. Here, the only written order entered in favor of Live Gold bears no indication of being merit-based. And as the court has noted, Judge Debevois so found, and no finding as to a 42 USC section 1983 violation. Moreover, the circumstances in which the TRO hearing were conducted and a review of the transcript of that brief hearing supports the view that the order was entered primarily from a balancing of the harms to plaintiffs, the attorney general's investigation and the Hilton Hotel, and thus constituted a pragmatic attempt by Judge Debevois on a Friday afternoon to maintain the status quo, leaving as he noted at the end of the transcript consideration of the merits of the application to the return date. The TRO transcript is also notable insofar as it does not provide any real discussion and any real challenge to the position that was being advanced advanced by the attorney general there. The attorney general was focusing on the fact that her investigation had only just commenced. And it was only two days before the TRO hearing that she was provided with any documentation from Live Gold and Singer Management. The focus, excuse me, I'm sorry. The focus of the court therefore was on the alleged harm that Live Gold and Singer Management were arguing. It was, they were making the assumption and the court was making assumption that they had common law authorization to utilize their names. And the argument that was being advanced was that if you do not enter the TRO, the Hilton will not have a safe harbor from being at risk of penalties under the Truth in Music Act. And therefore that was the primary thrust of the argument, not any challenge to the attorney general's reading of the statute. And if you review the emails and if you review the brief that was filed in the TRO hearing, plaintiffs were making assumptions as to what the apparent reading of the attorney general's, the attorney general's reading of the statute was. But there is no pointing to anything prior to that hearing as to any specific statements that were made by the attorney general. You have stated that the TRO maintained the status quo. The TRO, the status quo was the state of New Jersey was saying that these concerts must be billed as a tribute. Your Honor, the TRO went in and said that you will not interfere in any way that the concert went forward as a concert, not as a tribute and was introduced every day as a concert, not a tribute. So the TRO accomplished a good part of the relief that the plaintiffs were asking for. And I, I find no basis for your statement that the TRO maintained the status quo. Your Honor. I believe a full reading of the, of the transcript does read the transcript many times. Your Honor. I, I think the, the entire voice says in his opinion, he found that he entered the TRO. He found a substantial likelihood of success in the merits. He didn't say status quo, but the primary focus of his comments was about the relative harms to the parties, to the Hilton and to the attorney general's investigation and to the plaintiffs. And the point that was being pressed primarily by the plaintiffs was that the Hilton needed a safe Harbor. And that was the reason. And the judge and judge Debevoise was focusing on the fact like, is it clear that the Hilton is going to exceed? And Mr. Sharon was saying to judge Debevoise, I believe based on my conversations with the Hilton, they will. Let's pick up that point. If Mr. Sharon had gone to judge Debevoise and said, I want, I need a piece of paper. I need an order. What would judge Debevoise have done? He would have said it's moot now. Go home. Your honor. The, I think as made clear in the briefs that were filed in advance of the preliminary injunction, the position that was being advanced by, and also that's made clear in the complaint. This was not a complaint just about the August, 2007 concert at the Hilton. The focus was on future concerts. The, the contention was made that Atlantic city was a prime venue for these concerts. There was argument advanced at the preliminary injunction hearing. There was also a declaration that was drafted by Mr. Mellick, who was the head of lives, live gold and singer management indicating that they had future contracts. They had future concerts. But what could he have done beyond that, which he did in order to satisfy you with respect to the effect of what had just happened? Could he, it was there anything he could have done? He couldn't have run up to judge Debevoise and said, but anyway, you know, give me, I need a piece of paper. I need a preliminary injunction. Obviously judge Debevoise thought the whole thing was over. Your honor. I think the reason that judge Debevoise may have thought the whole thing was over was what the theme that he kept repeating on in the preliminary injunction transcript. And that is that that day he was going to be filing his decision in the Treadwell litigation. Finding that the Mr. Marsh, that live gold, then Mr. Mellick and others who were, who were sued for contempt were in contempt of the original order that was issued against Marshak. But that had nothing to do with at least two of the parties before the court on the September 7th hearing. But this court, as well as judge Debevoise in affirming the contempt order against live gold and Mr. Mellick noted that the drifters who were the focus of that litigation were the primary draw in the, in the concerts that were held by the three. The issue there was who has the right to the trademark. The issue before the court on September the 7th was the interpretation given to the truth and music act by the state of New Jersey, which in essence was that a, a registered trademark is valid under the statute and unregistered trademark is not. And that is the concession that Ms. Rack finally made in the hearing on September the 7th, that yes, a proved common law trademark will be accepted in the same light as a registered common law trademark, that the, that the presumption of validity only goes to validity. Here we are beyond validity and that the state of New Jersey in the, under the pressure of the questioning finally said, all right, your honor, we agree with your position. The judge said you are bound by this change you have made. And that is, you're talking about the Treadwell case. That really has nothing to do with the Treadwell case. Yes, it does your honor. I respectfully have to say, I think that a more reasonable interpretation of what judge Debevoise did.  Sharon and in the declarations that there were future concerts and the argument was being advanced the same way it was advanced at the TRO, that the Hilton needed a safe Harbor, that without the preliminary injunction going into effect, the Hilton had concerns. What did he mean when he said you are bound? Didn't he mean just what judge Roth said, which is you are bound to this interpretation of the truth and music act going forward. Your honor, I, the attorney general's position is that until the brief was filed in advance of the preliminary injunction hearing, there was not a dispute, any dispute in record as to the position that was being taken. There was a sentence in that brief that was identified that was incorrect. But what is, what is you are bound to me in this? What, what was he talking about when he said it? I think there was colloquy that if you review the transcript, there was colloquy. The court wanted to understand precisely because of the confusion of that Aaron sentence in the brief, what precisely. I mean, the sentence saying that the sentence was inadvertently included. That's fine. It's the same argument. But they argued it. They argued to judge Debra Boyce over you, you, the attorney general, over and over. It's the same argument that Ms. Rack was making. Your honor, I, I don't, I was not present at the hearing. My reading of the transcript is that that was not the position that was being advanced. But even if what the point that was being made was there was clarification as to the reading of that particular statute and what judge Debra Boyce was saying was his whole entire colloquy was to understand how the state law was being read. You changed 180 degrees. That's the argument that was advanced by Mr. Sharon. That's what the transcript says. That came from Mr. Sharon's brief. But the point that I want to make is. That's not a transcript. I mean, you can't get around the fact that she changed. Unregistered trademarks are entitled to the same. Validity under the act or the same protections under the act as registered trademarks. But the point I want to make, whatever way we characterize it is there was no determination by judge Debra voice of a 1983 violation of the hearing. After judge Debra voice has said, you're bound after Mr. Sharon has asked for a, a judgment summary disposition in his favor. And there's further talk about, are there more shows going on? What is going to happen? And judge Debra voice at the very end says to Mr. Sharon, which if any serious problems that arise, which the plaintiffs think require emergent relief, they can ask for it to be rescheduled on short notice. And your honor, I believe that the reasonable import of that was that he knew what the decision was going to be in the treadmill case. He had found that the drifters were the primary draw for those concerts. And I believe the judge Debra voice had questions whether in fact those concerts were going to go forward without the drifters. He had questions as to whether a certain trademark was valid, but Mr. Sharon's concern at the preliminary injunction hearing was the ongoing interpretation of the law and the change in the attorney general's position on the law and the agreement that the new, this new interpretation would prevail and judge Debra voice and says, and if you have further problems with this new interpretation, come in, I'll give you relief. I understand that your honor. I think the point I want to make is there is no finding by judge Debra voice that whatever that colloquy encompass, no finding of a 1983 violation, he could as much be saying, and I think that's the import of his decision on the fees, that there was simply a clarification, a state law clarification. He says the Lanham Act problems, the fifth amendment problems. Those were the issues that were raised and he was saying that the, I have to give, those are the allegations of those problems are solved. Those were the allegations, but what he did not make a specific finding that the attorney general had Lanham Act had violated any provision that would fall within 1983. And the change in position, he didn't no longer had to make those findings. Your honor, for purposes of Buchanan, we maintain you do need a 1983 finding. His finding could as much be a finding as to what state law. He said they won. They won, but it could be you won on state law. State law wins do not provide a basis for 1988 fees. Beyond that, under Hewitt versus Helms, they did not achieve a material change in the relationship with the attorney general. All that this, all that the, if we call it, if, if we accept what you have contended that this is a concession, all it provided was the legal framework in which the ultimate question that was presented in the litigation, the argument that was advanced at the preliminary injunction hearing and in the motion to dismiss was whether or not they had the common law authorization. This only provided the legal framework. And as the U.S. Supreme Court decided in Hewitt, because you receive a favorable ruling of law that is not attached to any merits relief, that does not constitute. Are you trying to get a question? Are you trying to get a question in? Yes, I am. I have two questions. First, what is the state's view of the minimum order the court should have entered to comply with Buchanan? Your Honor, there needed to be a written judgment either when Mr. Sharon asked for partial summary judgment, it would have to be summary judgment based on 1983, not a state law determination, or there would have to be a merit based determination that in the context of the ruling of that case, that there was a violation of 1983. There is nothing in the transcript that indicates. In other words, that form has to be followed. And that leads to my next question. If this court agrees with you in this case, what effect would our ruling have on civil rights actions in your state? Your Honor, I think this case and the other, you know, the court's decision and police PAPV and in Truesdale makes clear that the court needs an objective, needs and will apply an objective test. In PAPV, there was a merit determination by the district court. And as Judge Ambrose noted, it was an unusual situation where there was a clear determination of a 1983 violation that the city of Pittsburgh violated the constitution. There was no finding in this particular case. Is there room after Buchanan for the functional equivalent of a judicial order to serve the basis of, to rest attorney's fees on because the court seemed to be leaving room for that in Buchanan. You're saying there's no room for the judicial equivalent? For the functional equivalent of a judicial order? I believe this court in Truesdale somewhat expanded on the, I think was answering the question that was left open in Buchanan, whether or not there could be something, you know, short of the two examples that the Supreme Court gave. But as Judge Alito, then Judge Alito noted in his opinion, what was required for there to be the functional equivalent was mandatory language in a written order, signed by a district court and enforceable. We don't have those, even if you were to find that there could be the equivalent in, in the context of an oral order that was not memorialized. And I would maintain Judge, there's no reason why a plaintiff cannot submit, can not submit orders, cannot make motions to obtain that kind of merit-based judgment. I think, isn't that putting an additional burden on the plaintiffs in order to get compensation for attorneys' fees in matters brought under the Civil Rights Acts? Your Honor, I think the U.S. Supreme Court in Buchanan and in Seoul made clear that they wanted to set very, very clear standards. And those standards, in fairness to the defendant, was that there should be a written order entered by a court predicated on a 1983 violation. The state, the governmental entities are entitled to that. I hear you, but I also heard these very, very expert judges on our court who served as district judges saying that that's not the way it works on the street. Your Honor, I have very limited federal court experience, but reading through the 1988 opinions that have come since Buchanan, it is clear... Will you concede that what the state wants here places a larger burden on the plaintiff in the civil rights action, given that usually the cases are decided without, these cases are decided without a formal order? Your Honor, that's not my experience has been that the cases... We had the experience of several, if I recall, several judges on this podium today who had been district judges had said that's the way it's done. But, Your Honor, in PAPV, what was clear there and what the court emphasized was that the district court made an express finding, an express 1983 finding. And beyond that, there should not only be consideration of the impact on the plaintiffs, but also the impact on the defendants. If you have a TRR... If you don't have a TRR order that provides a 1983 finding, you don't have... The state does not have the ability to seek review of that determination. There was no way reading that transcript from the TRO hearing that the state would have believed given what was put in the TRO order that Judge Debevoise had entered a 1983 finding against the state of New Jersey. And I think that is as significant in the same way that the court considered the interests, not only of the plaintiffs, but of the government and the interests of Congress, that there should be only certain circumscribed circumstances where a prevailing party status shall be allotted. It is an exception to the American rule. And in this particular case, there was no reason why a highly competent counsel would not have been capable of filing... Counsel, may I interrupt? Yes. May I interrupt you? Congress made that decision when they enacted Section 1988 for the first time to allow attorneys' fees as an exception to the American rule in civil rights actions brought under 1983. Congress made that decision. We can't fight that decision. You can't fight that decision. And we agree, Your Honor, but we believe that that decision has to be viewed through the prism of Buchanan and the very clear standards that the Supreme Court adopted there, as well as in Soll v. Weiner. And it does not allow for the kind of freefall test that is being proposed here today. The states and the governmental entities are entitled to specific 1983 findings that they can review, that they can decide whether or not they're going to appeal. In PAPV, the city of Pittsburgh decided not to appeal, and they acquiesced. Would you concede that absent Buchanan, you lose? No, Your Honor. I don't think. The law would be bomb-guarded and you would lose, right? No, because I don't think you have a 1983 finding. You've got the Catalyst Theory. Yes, I know. It was overturned. I still think you have the defect that Judge Debevoise's oral. You're saying even under the Catalyst Theory? I don't. Under the Catalyst Theory presupposes that there will be a 1983 violation. And you're only saying all you did before Judge Debevoise, was clarify a prior position. That's your position here. The position, our argument was that there was a mistake made in the brief. But even if it were 180 degree turnaround, it is a state law issue. It could as much be a finding by a concession as to what state law is. The Catalyst Theory never was intended to provide relief to a federal plaintiff for a win on state law alone. But if it had been a state law issue, simply an injunction, is there not grounds in the award of an injunction for a petition for attorney's fees? Under equitable law. I'm sorry. You don't need, when you get an injunction, under equity, there is no fee-shifting statute. I'm a Delawarean, so I like the Court of Chancery. We have a Court of Chancery in New Jersey. Yes, we do. When there is a grant of an injunction, when there is a grant of a PRO as to the merits, there is the opportunity to petition for an attorney's fee. So the State of New Jersey can't say, well, we can't consider attorney's fees unless there's a 1983 statute, because there are other grounds under which an attorney's fee could be granted in this case. But, Your Honor, in this particular case, the application was based upon 1988, and 1988 requires a finding of a violation of 42 U.S.C. 1983. You were talking about your confusion about what exactly the TRO meant. No, no, no, Your Honor. What I'm saying is I think even under the catalyst theory, we don't have sufficient clarity in Judge Debevoise's findings, even if they are deemed findings, in the TRO transcript or in the preliminary injunction, whether or not he was saying, I now, even if you accept the argument that he was pushing the Attorney General to the wall, was it a push into the wall on an issue of State law? There's no clarity that this, in fact, was a 1983 finding. He says that solves the Fifth Amendment problem. He says it solves the Manimac problem. There was a finding. Your Honor, the brief that was filed by Mr. Sharon made clear that with the addition, he conceded that there was no longer any constitutional issue. That doesn't mean that Judge Debevoise was making a finding, and I think that just demonstrates that it was a colloquy that was untethered to any specific. Are you suggesting he thought the issue of whether there was an equal protection argument or a Manimac, that those issues were still open? No, because Mr. Sharon conceded at the end of the case that they were no longer open. Because you changed your position 180 degrees. Your Honor, we did not concede. Whatever the Attorney General did, it was not a concession that 1983 had been violated. All that was involved was an interpretation of State law, and the Attorney General is entitled, as would any other governmental entity, to a finding by a district court, and that is the reason for the merits-based determination. There has to be a finding that 1983 has been violated. There is no such finding in this particular case. So your view is that Judge Debevoise was just saying the constitutional issues go by the wayside given the change in the State's interpretation of that narrow State law issue? Yes, I believe that's what he meant, and I don't think it was a surprise, therefore, when he considered the 1988 FIA application, he looked at the TRO transcript and saw, even though there was a sentence in the transcript or two sentences where he said there's a probability of success on the merits, but certainly it wasn't a merit-based determination. The Attorney General never filed a brief in response to the TRO. Judge Debevoise received the papers the morning of the TRO hearing. He mentions in the transcript, I glanced at the papers, that can't be determined to be a merit-based determination. He did look at the complaint and said, based on the allegations, I find there's a probability of success, but that doesn't satisfy what this Court put forth in PAPV and what the U.S. Supreme Court has required under Buchanan. It is not a declaration that the State of New Jersey has violated the Constitution. I guess your time is almost up anyway. It sounds like there are no more questions, which I find hard to believe. You've either answered them all or done us all in. Thank you, Ms. Sulkowitz. I believe Mr. Schor on research concerns. Pages 362 to 369 of the record are my reply brief to Judge Debevoise. Every single one of those pages identifies the, quote-unquote, errant or inadvertent sentence that was the crux of her position for a month. She had every opportunity at the start of the preliminary injunction hearing to, quote-unquote, clarify that sentence. It had been hammered home by the State. The Attorney General. Let's say Judge Debevoise had not shared a tentative view, full-blown view, however you want to quantify it. But as a result of the colloquy that went on in court, the State made what, in your view, is a 180. Are you the prevailing party? If Judge Debevoise had said nothing? If Judge Debevoise had... We'll start with that. If Judge Debevoise had said nothing and she came in and just said... No, no, no. There's a colloquy. It's going back and forth. There are clearly questions. It's your position that Judge Debevoise was making statements and findings. I'm going to take that off the table for a minute. Judge Debevoise is asking questions. He's getting answers. As a result of the back and forth, the State says, you know, Judge, we've considered this. We have this errant sentence. It's wrong. We're changing our position. No, there... 180. Are you the prevailing party under those facts? No, there has to be a... The district court has to have made a finding on the merits in Livegold's favor. But here we keep trying to guess what he did. We don't have to guess. He says it repeatedly. He said it on March 9th. He said it in his written order. I found equal protection, due process, First Amendment problems, and I found that those problems were... I found... Saying I found problems means it is a finding by the district court. On the merits. That as a matter... You know what that means. As a matter of the constitutional law that I had raised, he had found that Livegold was right. He looked at the Attorney General and said, you're wrong. Judge Debevoise has been on the bench since 1979. If he wanted to say, I find, do you think that he would hesitate to say, I find the following? What he did on March 9th, he said that the 180-degree change eliminated the preemption problem that he had found, eliminated the due process problem that he had found, and eliminated the equal protection problem that he had found, so that the statute as construed, it would not violate or come in conflict with the Lanham Act any longer. Reading through the lines, what he's saying is the change in position did those three things. But did he make a finding to that? What you had here...  I'm sorry. Judge Ambrose, the change in position was what resolved the problems. He found there were problems, and he found, therefore, that we were entitled to legal relief. The relief we got was the 180 and the judicial binding. And I need to... Isn't there an issue when you say he found there were problems? Is that materially different from saying there was... I hold that there is preemption. I hold that there's a conflict here. Is there something different between saying, you know, there's a real issue here and saying, as a matter of law, you lose on this point of law because the law means X? Courts use magic words like holding when the other side doesn't do a 180 and doesn't stop the case midstream. Here, the judge didn't have to make a holding. I asked him to. I asked him to do a summary disposition. But my claim... Every one of Livegold's claims had a mix of both constitutional and contract elements. Every claim for declaratory judgment was premised on the fact that we claimed our assignments were valid. And Judge Debevoise actually began the preliminary injunction hearing telling me that he thought the Attorney General was on stronger grounds on the merits, which surprised me. But then what he made clear was that he meant the assignments, because he found problems with the singer management drifter's assignment. He thought that my case goes down, my claims go down, because of the assignment problems. When I explained that wasn't the case, he was right back at her. Work with me for just a second. What if his words had been this instead of the words that you're pointing to in the transcript? Had he said, you know, there could be some real merit here. I see issues that are troublesome to me in the state's position. I think they're really well advised to be rethinking this. And they came back and said what they said, and you said, hey, that's great. And then you said, we want a judgment. And he said, no, you don't get any judgment here. All we've got, it resolves the issues I had. Would that, would you be still saying I'm a prevailing party? Your Honor's hypothetical has to put aside the TRO, but if we put aside the TRO and we just come in with a blank slate, and that's what we get, I would not be making the same argument. But when the district judge. He said problems. He said they exist. Problems in this case means violations. He actually used the term violate. He said there was a conflict with the Lanham Act. There were violations with the Lanham Act. They were based on equal protection. Does that answer your question, though, Judge Jordan? It does. Okay. All right. Thank you very much. Excellently argued. A very important case, obviously, as they all are. This certainly has more implications than some do in both cases. Great job. Thank you very much. We'll take another question. All right. Thank you. Thank you.